UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENNIFER L. LEMIEUX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:06-cv-0941-DFH-WTL |
| | ) | |
| JOSEPH R. GUY and JOSEPH R. GUY, | ) | |
| P.C., an Indiana professional corporation, | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON MOTION FOR ATTORNEY FEES AND COSTS

Plaintiff in this Fair Debt Collection Practices Act case seeks an award of attorney fees and costs.  Before even the initial pretrial conference in this action, defendants used Rule 68 of the Federal Rules of Civil Procedure to make an offer of judgment of $1,000 – the maximum available statutory damages – plus attorney fees and costs to be decided later.  Plaintiff accepted the offer and seeks fees and costs totaling $8,458.39.  Defendants object that the request is unreasonable.  As explained below, the court finds that a reasonable award is an attorney fee of $2,000 and costs of $372.94.

The Fair Debt Collection Practices Act provides for an award of reasonable attorney fees and costs to a prevailing plaintiff.  15 U.S.C. § 1692k(a)(3).  Plaintiff's motion seeks $7,885 in attorney fees for four different attorneys for a total of 24.3 hours, plus costs of $573.39.  The Supreme Court has expressed the hope that

a "request for attorney fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  In this case, in light of the speedy offer of judgment, the fee request is the *only* subject of litigation.

Defendants' response to the fee petition reflects considerable frustration with the FDCPA and the incentives it creates for lawyers to find relatively trivial and harmless violations of the law, or even merely arguable violations of the law, and then to use the statute's fee-shifting provisions to force quick settlements with substantial payments of attorney fees that are often far higher than any recovery for the plaintiff herself.  Defendants point out that plaintiff's Chicago attorneys have filed more than 200 FDCPA cases in the Southern District of Indiana alone over the last several years.

This court is conscious of the risks incurred by a defendant who feels he did nothing wrong and goes to trial.  If the courts disagree and find a violation, there is a serious risk of a fee and cost award in the thousands, or even tens of thousands of dollars.  The incentive to offer a quick settlement in even trivial or nearly frivolous cases, as galling as it may be to a defendant, is the product of the FDCPA's broad liability provisions and its fee-shifting provision.

The defendants' observations about the policy choices need to be addressed to Congress, not this court.  Time and again, the Seventh Circuit has reminded district courts that the FDCPA means what it says and that the courts have an

obligation to enforce the FDCPA as written.  The court must also keep in mind that the language of the FDCPA makes an award of attorney's fees mandatory in favor of a prevailing plaintiff.  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 n.3 (7th Cir. 1997), citing *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) ( "Because the FDCPA was violated . . . the statute requires the award of costs and a reasonable attorney's fee . . ." ), quoting *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir. 1989).

For present purposes, the key question is what fee is "reasonable."  In evaluating a fee request, the starting point is the lodestar amount, the hours reasonably devoted to the matter, multiplied by a reasonable hourly rate, typically measured by the hourly rate the attorney receives for comparable work on a non-contingent basis.  *Hensley*, 461 U.S. at 433-34; *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) (barring multiplier for contingent nature of fees).

*Hourly Rates*

Most of the time spent on this case was by David J. Philipps, a leading litigator of FDCPA claims.  He seeks a rate of $340.  Mary E. Philipps is his partner and seeks a rate of $310.  Their associate Bonnie C. Dragotto seeks a rate of $200.  All three work in Chicago.  Indianapolis attorney Steven Halbert has acted as local counsel and seeks a rate of $300.

The Seventh Circuit has stressed that "the best measure of the cost of an attorney's time is what that attorney could earn from paying clients." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). What another person is willing to pay "establishes the market's valuation of the attorney's services." *Id.* If an attorney is normally able to sell her time at, say, $300 per hour (and actually receives that amount), then it makes sense to apply that $300 rate when a court must fix her fee based on market rates. In this case, plaintiff's Chicago attorneys have stated without any detail that they actually bill and collect the rates they seek when they work on an hourly basis, without contingent fees. Plaintiff's Indianapolis attorney has provided no individualized information about his rates but has submitted a recent survey of Indianapolis area rates for private practitioners. While the survey controls for experience, it fails to control for any other relevant variable, such as practice area. At the same time, relatively modest fee requests, in gross terms, do not always require detailed documentation. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 411 (7th Cir. 2000); *Henry v. Webermeier*, 738 F.2d 188, 193 (7th Cir. 1984) (less elaborate submissions may be acceptable for fee requests of modest scope).

With these qualifications noted, lest the court be interpreted as saying that these rates are necessarily reasonable for these attorneys in all similar cases, the court is willing to accept the claimed rates as reasonable for this case. But in doing so, the court may and should expect that plaintiff's counsel should have been able to provide legal services in a highly efficient manner.

*Hours Spent*

The principal issue here is the extent of the time spent on this matter, especially in light of the experience and expertise of these attorneys in the FDCPA. A high hourly rate that reflects such expertise should be paralleled by high efficiency. See *Gusman*, 986 F.2d at 1150-51; *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 264 F. Supp. 2d 753, 765 (S.D. Ind. 2003); *American Booksellers Ass'n v. Hudnut*, 650 F. Supp. 324, 328 (S.D. Ind. 1986) ("while the billing rates of specialists from large cities may be higher, the expertise of the specialist may actually reduce the number of hours that would normally be necessary to gain a mastery of the particular area of the law").

In evaluating the reasonableness of the claimed hours, the chronology of the litigation is critical. In April 2006, attorney Halbert met with plaintiff Lemieux regarding defendant Joseph Guy's effort to collect a debt from her for anesthesiology services. The theory of the FDCPA claim is that attorney Guy's initial demand letter stated the amount of the debt and also indicated that Lemieux "may" also be liable for attorney fees if litigation became necessary. Halbert sent a letter to Guy asking about the status and amount of the debt. Guy responded with a copy of the account record, stated that interest at eight percent would be added if suit were filed, as allowed by Indiana law, and added: "No attorney fees are being claimed on this account." This letter became Exhibit C to the complaint as "proof" that the reference to the possibility of attorney fees in

Guy's original notice was deceptive.  Also, the reference to possible attorney fees without a specific amount was alleged to have violated the FDCPA provision requiring the collector to state the "amount" of the debt.[1]

After meeting with Lemieux, Halbert forwarded the file to David Philipps. He and Halbert then talked to plan the case.  Halbert met with Lemieux on May 15, 2006 to discuss a potential FDCPA claim and discussed representation and a contingent fee agreement.  Philipps prepared a complaint, and it was filed on June 15, 2006, along with appearances by four lawyers.  (Both David and Mary Philipps reviewed the complaint.   Neither caught the fact that the second paragraph of the FDCPA form complaint referred to the wrong plaintiff.) Defendants filed an answer on July 5, 2006, and an amended answer on July 10, 2006.  On July 7, 2006, Magistrate Judge Lawrence scheduled an initial pretrial conference for September 13, 2006.

On July 25, 2006, plaintiff filed a motion to amend her complaint to correct the reference to the wrong plaintiff in the second paragraph and to add a new

---

[1]This court rejected a similar claim in *Veach v. Sheeks*, 2002 WL 243658, *2 (S.D. Ind. Jan. 4, 2002), though the Seventh Circuit reversed in part on a different theory, without deciding whether or how a debt collector should specify an amount of attorney fees that might be sought in a lawsuit.  316 F.3d 690, 692-93 (7th Cir. 2003).   Of course, if the notice had specified an amount of attorney fees, Guy might have been sued under the FDCPA for deceptively implying that a court had given its approval to that amount.  See, *e.g.*, *Brooks v. Auto Sales & Service, Inc.*, 2001 WL 686950, at *6-7 (S.D. Ind. June 15, 2001) (McKinney, C.J.) (denying motion to dismiss such a claim).

claim based on the state court collection action that Guy had filed against Lemieux.  (The claim was that it "appeared" that the lawsuit's claim for interest started the calculation too early, on the date the anesthetist provided the service rather than the date the first bill had been sent.)

On August 14, 2006, defendants made an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure.  The offer was for the statutory maximum damages of $1,000 "plus reasonable attorney fees and costs incurred as of August 14, 2006."  Plaintiff accepted the offer of judgment on August 16, 2006. Attempts to resolve the fee issue by agreement were not successful, and plaintiff filed her petition.

In terms of the measure of success, plaintiff Lemieux's success was complete.  Defendants quickly offered a judgment for the maximum she could have recovered under the FDCPA.  That success does not necessarily say anything about the merits of the underlying claim.  It may say a great deal about the effects of the FDCPA's combination of nearly strict liability for harmless violations and its fee-shifting provision.[2]

---

[2]Plaintiff states in her reply brief:  "Presumably, had Defendants actually believed they were entirely without fault in this matter, and had thus not violated the FDCPA in any manner, they would not have offered to have judgment entered against them."  Pl. Reply at 6.  Plaintiff's counsel are too experienced and sophisticated in these matters to have made this statement with a straight face.

But the basic problem with the attorney fee petition is that plaintiff is seeking nearly $8,000 in attorney fees for four attorneys in a case that was literally open-and-shut, resolved by an agreed judgment before so much as an initial pretrial conference.

Four lawyers:  Plaintiff's counsel make the point that it is not unusual for lawyers to work in teams, citing *Bohen v. City of East Chicago*, 666 F. Supp. 154, 157 (N.D. Ind. 1987) (Easterbrook, J., by designation) ("Two lawyers are the minimum in much private litigation."). True enough, though one might expect the team of lawyers checking one another's work to have spotted something as basic as a reference to the wrong plaintiff on the first page of the form complaint.  In any event, four are more than two, and the work on this lawsuit remained, on the merits, at the simplest level, not calling for multiple lawyers.

Excessive hours:  The fee request here seeks recovery for excessive time, not reasonably spent on this case.  The lawyers who worked on this case claim high hourly rates.  The court does not disagree with those rates, at least in the absence of a more specific challenge to them.  But for those rates, courts, opponents, and clients are entitled to expect both expertise and efficiency, as noted above.  The expectations for efficiency are especially high in the kind of high-volume litigation represented here, in which forms for complaints, discovery requests, and case management plans are the norm.  For example, with the form documents available, the court does not believe it was reasonable for an attorney with David

Philipps' specialized expertise to bill 3.1 hours at $340 per hour to draft Rule 26 disclosures, proposed interrogatories, document requests, and case management plan, or to spend 2.3 hours drafting a complaint that still had at least one glaring error in it.

There are some other more specific issues with the time billed to the case. Halbert has billed about two hours (at $300 per hour) for meeting with the client regarding the defense of the original claim against her (the validity of which has never been in issue) and for discussing representation and a contingent fee agreement with her in this case. David Philipps has billed for more than an hour spent on preparing his original fee request to defendants for purposes of settlement. It is not appropriate to bill the client for the time discussing the terms of her employment of the attorneys, and it is not appropriate to bill defendants in this case for time spent on defense of the underlying collection action.

Also, a considerable amount of the billed time was taken up by conferences among the four attorneys. Similarly, at least two lawyers billed for time spent reviewing each document received from the defense, and then for their conferences with one another. The court understands that conferences are necessary when multiple attorneys are reasonably involved. See, *e.g., Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 2002 WL 1801647, *5 (S.D. Ind. July 5, 2002) (discounting fee request by five percent for conferences in complex patent case involving large

teams of lawyers on both sides).  This is not such a case, and the effect was to inflate the fee request to unreasonable levels.

In sum, this was a simple case, in which the defendants offered judgment before the initial pretrial conference.  The court finds that a reasonable attorney fee under these circumstances is no more than $2,000, which is twice the amount plaintiff recovered.

*Costs*

Plaintiff seeks costs of $573.39, and defendants have objected to some of the costs.  The separate $100 charge for computer assisted research is not supported by any specific information, and there is no indication of where such research might have been used in this case.  In any event, the charge may not be billed separately from the attorney fees.  *Haroco, Inc. v. American National Bank & Trust Co.*, 38 F.3d 1429, 1440-41 (7th Cir. 1994) (reversing award of such expenses as part of cost award).  Overnight deliveries and facsimiles were for the convenience of counsel and are not justifiably billed to the opponent.  The $50 fee for service of process was unnecessary in light of the procedure available under Rule 4(d) of the Federal Rules of Civil Procedure.  The court will allow $20 for photocopying charges.  The result of these deductions is that the court allows total costs of $372.94.

Accordingly, the court will enter a separate judgment awarding plaintiff attorney fees and costs totaling $2,372.94.

So ordered.

Date: November 20, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Bonnie Christine Dragotto
GOMOLINSKI & PHILIPPS LTD
bdragotto@aol.com

Richard B. Gonon
rgonon@aol.com

Joseph R. Guy
JOSEPH R. GUY, PC
guylawoffices@aol.com

Steven James Halbert
shalbertlaw@aol.com

David J. Philipps
GOMOLINSKI & PHILIPPS LTD
davephilipps@aol.com

Mary E. Philipps
GOMOLINSKI & PHILIPPS, LTD
mephilipps@aol.com